IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHAKILL FENDERSON, | ) | CASE NO. 3:25-CV-00408-BYP |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| vs. | ) | UNITED STATES DISTRICT JUDGE |
| | ) | |
| WARDEN RYAN WALTERS, | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| Defendant. | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2.  Before the Court is the Petition of Shakill Fenderson ("Fenderson" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. Fenderson is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case *State v. Fenderson*, Erie County Court of Common Pleas, Case No. 2021 CR 0317.  For the following reasons, the undersigned recommends that the Petition be DENIED.

Also pending before the Court is Petitioner's Motion to Expand the Record (Doc. No. 11.) For the following reasons, Petitioner's Motion to Expand the Record (Doc. No. 11) is DENIED.

### I.      Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The state appellate court summarized the facts underlying Fenderson's conviction as follows:

1

{¶ 2} On July 10, 2021, E.C. died after sustaining multiple gunshot wounds to his head and neck. Shakill Fenderson was charged with his murder. On August 6, 2021, he was indicted on charges of aggravated murder, a violation of R.C. 2903.01(A) and 2929.02(A), an unclassified felony, with a firearm specification under R.C. 2941.145(A) and a repeat violent offender specification, under R.C. 2941.149(A) (Count 1); tampering with evidence, a violation of R.C. 2921.12(A)(1) and (B), a third-degree felony (Count 2); and complicity in the commission of an offense, R.C. 2923.03(A)(2) and (F), a third-degree felony (Count 3).

{¶ 3} Fenderson entered a plea of guilty to amended Count 1, involuntary manslaughter, a violation of R.C. 2903.04(A) and (C), a first-degree felony, along with the repeat violent offender ("RVO") specification, in exchange for the dismissal of the remaining counts and specification. The court found him guilty, ordered a presentence investigation report, and continued the matter for sentencing.

{¶ 4} At the sentencing hearing, on the conviction for involuntary manslaughter, the trial court ordered Fenderson to serve a minimum prison term of 11 years and a maximum prison term of 16 and one-half years. It also found that the criteria were met for imposition of a sentence for a repeat violent offender. It imposed an additional, consecutive ten-year prison term. Fenderson's aggregate prison term totaled 21 years to 26 and one-half years.

*State v. Fenderson*, 2023-Ohio-2903, ¶¶ 2-4, (Ohio Ct. App. Aug. 18, 2023).

## II.    Procedural History

### A.    Trial Court Proceedings

On August 6, 2021, the Erie County Grand Jury issued an indictment charging Fenderson with one count of aggravated murder with firearm and repeat violent offender specifications, in violation of R.C. 2903.01(A), 2929.02(A) (Count 1); tampering with evidence in violation of R.C. 2921.12(A)(1), 2921.12(B) (Count 2); and complicity in the commission of an offense in violation of R.C. 2923.03(A)(2), 2923.03(F) (Count 3). (Doc. No. 8, Ex. 1.)

On April 19, 2022, Fenderson filed a Motion to Suppress Illegally Seized Evidence and Statements Made by Defendant While in Custody. (*Id*., Ex. 3.) The State filed its Response to Defendant's Motion to Suppress on April 21, 2022. (*Id*., Ex. 4.) On April 22, 2022, Fenderson filed Motion for Leave to File Motion

2

to Suppress Outside of Rule 12(D) Time Limitations in the Interest of Justice; Reply to the State's Response to Defendant's Motion to Suppress. (*Id.*, Ex. 5.) On April 25, 2022, the State filed Response to Defendant's Motion for Leave to File Motion to Suppress Outside of Rule 12(D) Time Limitations. (*Id.*, Ex. 6.) The next day, Fenderson filed Defendant's Reply to State's Response to Defendant's Motion for Leave to File Motion to Suppress. (*Id.*, Ex. 7.) On April 27, 2022,[1] following a hearing in which all parties were in attendance and stated their arguments on the record, the court denied Fenderson's Motion to Suppress. (*Id.*, Ex. 8.)

On April 29, 2022, Fenderson filed Motion to Reconsider the Court's Denial of Defendant's Motion to Suppress. (*Id.*, Ex. 9.) A few days later, Fenderson filed a Motion for Leave to Supplement Defendant's Motion for Reconsideration of the Court's Denying Defendant's Motion to Suppress with the Attached Unreported Case. (*Id.*, Ex. 10.) On May 5, 2022, the court denied Fenderson's Motion for Reconsideration. (*Id.*, Ex. 11.)

On May 9, 2022, Fenderson filed Motion for the Court to Issue Findings of Fact and Conclusion of Law in Denying Defendant's Motion to Suppress and Motion for Reconsideration Denying Defendant's Motion to Suppress. (*Id.*, Ex. 12.)

On May 11, 2022, Fenderson entered a plea of guilty to a lesser charge of involuntary manslaughter in violation of R.C. 2903.04(A) and (C), with dismissal of both Counts 2 and 3. (*Id.*, Ex. 13.) On July 5, 2022, the trial court sentenced Fenderson to a minimum of eleven years up to sixteen- and one-half years on Count 1, and found that he met the criteria for the repeat violent offender specification. (*Id.*, Ex. 19.) Due to the repeat violent offender specification, the trial court sentenced Fenderson to an additional term of ten years to be served consecutively, for a total of twenty-one years to twenty-six years. (*Id.*)

**B.      Direct Appeal**

---

[1] The Judgment Entry denying Fenderson's Motion to Suppress was filed on April 29, 2022, however, it appears the decision occurred on April 27, 2022. See Doc. No. 8-1, Exs. 8-9.)

3

On January 17, 2023, Fenderson, through counsel, timely appealed to the Sixth District Court of Appeals. (*Id*., Exs., 21, 24.) In his merits brief, Fenderson raised the following assignments of error:

> Assignment of Error One: The trial court erred to the prejudice of Mr. Fenderson and in violation of the 14th Amendment to the United States Constitution and Art. I, Sec. 16 of the Ohio Constitution when it used a Pre-Sentence Investigation Report which contained unsubstantiated and false information in arriving at its sentence.

> Assignment of Error Two: The trial court erred in violation of the 14th Amendment to the United States Constitution and Art. I, Sec. 16 of the Ohio Constitution in sentencing Mr. Fenderson above the minimum sentence on the involuntary manslaughter count where no predicate offense exists to support it.

> Assignment of Error Three: The trial court violated Mr. Fenderson's rights under the Sixth Amendment by engaging in judicial fact-finding to increase his maximum sentence by 10 years on a RVO specification where the facts were not admitted to by him nor found by a jury.

> Assignment of Error Four: Mr. Fenderson's right to due process under the 14th Amendment to the United States Constitution and Art. I, Sec. 16 of the Ohio Constitution was violated as a result of the trial court's consideration, at sentencing, of an undisclosed victim's correspondence to the court which was not provided to defense counsel.

> Assignment of Error Five: Mr. Fenderson's sentence must be reversed because the S.B. 201 indeterminate sentencing scheme under which he was sentenced violates the Sixth Amendment of the United States Constitution and Art. I, Sec. 5 of the Ohio Constitution because a defendant's imprisonment is dependent upon a factual finding not made by the jury beyond a reasonable doubt or admitted by the defendant.

> Assignment of Error Six: The S.B. 201 indeterminate scheme under which Mr. Fenderson was sentenced violates separation of powers by delegating to the executive branch discretion to keep the defendant in prison beyond the judicially imposed presumptive minimum sentence.

> Assignment of Error Seven: The S.B. 201 indeterminate sentencing scheme violates substantive due process because it (1) fails to provide a defendant with adequate notice of what conduct can enable the ODRC to keep the defendant in prison beyond the presumptive minimum term; and (2) allows the ODRC to keep a defendant in prison beyond the presumptive minimum sentence on the basis of prison housing and classification decisions that need not be the result of any misconduct by the defendant.

4

Assignment of Error Eight: The S.B. 201 indeterminate sentencing scheme violates procedural due process by allowing for the extension of a prison sentence based on findings made at a hearing where the prisoner has no guaranteed right to be present, have counsel, confront witnesses, subpoena witnesses or to off er testimony on his own.

Assignment of Error Nine: Appellant's sentence is contrary to law and must be reversed because the court failed to provide notice of the R.C. 2929.19(B)(2)(c) notifications at his sentencing.

(*Id*., Ex. 28.) The State filed a brief in response. (*Id*., Ex. 25.) Fenderson filed a Reply Brief. (*Id*., Ex. 26.) On May 2, 2023, Sixth District Court of Appeals overruled each assignment of error, except for the ninth assignment of error. (*Id*., Ex. 29; *State v. Fenderson*, 2023-Ohio-2903.) The matter was remanded for the limited purpose of permitting the sentencing court to provide the notifications required by R.C. 2929.19(B)(2)(c), and to enter a nunc pro tunc entry correcting two citation errors in the July 5, 2022 Judgment Entry. (*Id*.)

On October 2, 2023, Fenderson, through counsel, timely appealed to the Ohio Supreme Court. (*Id*., Ex. 32, 33.) Fenderson raised the following propositions of law:

Proposition of Law No. I: The Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution do not permit a sentencing court to sentence a defendant above the minimum sentence on an involuntary manslaughter count where no predicate offense exists to support it.

Proposition of Law No. II: A court violates a defendant's rights under the Sixth Amendment to the United States Constitution and Art. I, Sections 5 & 10 of the Ohio Constitution if it engages in judicial fact-finding to increase his maximum sentence by 10 years on an RVO specification where the facts were not admitted to by the defendant nor found by a jury.

Proposition of Law No. III: A trial court's consideration, at sentencing, of an undisclosed victim's correspondence, which was not provided to defense counsel, violates a criminal defendant's right to due process under the 14th Amendment to the United States Constitution and Art. I, Sec. 16 of the Ohio Constitution.

5

Proposition of Law No. IV: The "Reagan Tokes" S.B. 201 indeterminate sentencing scheme violates the Sixth Amendment and Article I, Section 5 of the Ohio Constitution because a defendant's imprisonment is dependent upon a factual finding not made by the jury beyond a reasonable doubt or admitted by the defendant.

Proposition of Law No. V: The S.B. 201 indeterminate sentencing scheme violates substantive due process because it (1) fails to provide a defendant with adequate notice of what conduct can enable the ODRC to keep the defendant in prison beyond the presumptive minimum term; and (2) it allows the ODRC to keep a defendant in prison beyond the presumptive minimum sentence on the basis of prison housing and classification decisions that need not be the result of any misconduct by the defendant.

Proposition of Law No. VI: The S.B. 201 indeterminate sentencing scheme violates procedural due process by allowing for the extension of a prison sentence based on findings made at a hearing where the prisoner has no guaranteed right to be present, have counsel, confront witnesses, subpoena witnesses or to offer testimony of his own.

(*Id*., Ex. 33.) The State filed a Memorandum in Opposition to Jurisdiction. (*Id*., Ex. 34.) On December 26, 2023, the Ohio Supreme Court declined to accept jurisdiction pursuant to S. Ct. Prac. R. 7.08(B)(4). (*Id*., Ex. 35; Case No. 2023-1251.)

## C.     Federal Habeas Petition

On March 2, 2025, Fenderson filed a Petition for Writ of Habeas Corpus. (Doc. No. 1.) Fenderson asserted the following grounds for relief:

**GROUND ONE:** Petitioner's rights under the 14th Amendment were violated as a result of the sentencing court sentencing him above the minimum sentence for involuntary manslaughter where no predicate offense exists to support it.

**Supporting Facts:** The State did not identify or produce evidence of a predicate offense for Mr. Fenderson's involuntary manslaughter charge. The involuntary manslaughter statute to which Mr. Fenderson entered a guilty plea prohibits a person from causing the death of of [*sic*] another as a proximate result of committing or attempting to commit a felony. No predicate felony was included in the indictment, nor was one provided in any pre-plea factual statement or during the plea colloquy, at sentencing or ever placed in record. It does not exist. It remains unknown what felony Mr. Fenderson allegedly committed or attempted to commit which proximately

6

caused the death of E.C. Nonetheless the court sentenced him to the maximum,11-16.5 years, as opposed to 3-4.5 years on this count using specific factors enumerated in R.C. §§ 2929.11, 2929.12 or 2929.14, which it was required to consider, involving recidivism and seriousness of the offense. These factors are offense/offender-specific and depend on the nature of the unknown felony predicate. The maximum sentence for involuntary manslaughter was a prerequisite for an RVO enhancement, on which the court also imposed the maximum sentence after making unsupportable findings.

**GROUND TWO:** The state trial court violated Petitioner's rights under the 6th Amendment by engaging in judicial fact-finding to increase his maximum sentence by 10 years on an RVO specification where the facts were not admitted to by him nor found by a jury.

**Supporting Facts:** The court engaged in judicial-fact finding in exercising its discretion to impose a nonmandatory additional consecutive prison term on the RVO specification, and in selecting the maximum sentence of 10 years. In doing so, it was required to make mandatory factual findings under R.C. 2929.14(B)(2)(a)(iv) and (v). These facts were not admitted by Mr. Fenderson nor did they involve a prior conviction. The court was required to consider R.C. 2929.12 factors, and find, inter alia, that the prison term would otherwise be inadequate to punish Mr. Fenderson, and the RVO sentence was necessary to protect the public from future crime because of his likelihood of recidivism and the seriousness of the offense. A jury did not make any such findings. Mr. Fenderson's additional 10-year sentence was, rather, based on judicial findings which increased the maximum sentence he could receive based upon his guilty plea and conviction alone. The sentencing court explicitly applied the RVO provisions at issue and made those findings in imposing an additional 10-year sentence which are reflected in its sentencing entry. The appellate court could not determine whether, in the absence of the findings Petitioner would have received 10 years on the RVO.

**GROUND THREE:** The state trial court violated Petitioner's 14th Amendment due process rights by considering, at sentencing, an undisclosed victim-impact letter which was not provided to defense counsel.

**Supporting Facts:** During sentencing, the Victim Advocate mentioned that the victim's mother had previously provided a statement for the trial court's consideration which she did not want to be read aloud. It is unclear who exactly this "mother" is given the victim's background. The correspondence was considered by the court but was never provided to defense counsel, and -- as requested, it was not read into the record. The trial court based its sentence on this victim impact statement, but its contents were not disclosed

7

to the defendant, making it impossible for him to challenge any false statements which were asserted in it. The appellate court reviewed the statement and found that the victim did not just explain how the death of E.C. impacted her emotionally, but alleged that Mr. Fenderson, who entered a plea only to involuntary manslaughter, actually planned the victim's murder. Because Petitioner was not provided a copy of the alleged victim's statement he was unable to refute the incriminating allegations or challenge any false information.

**GROUND FOUR:** Ohio's "Reagan Tokes" legislation, S.B. 201's indeterminate sentencing scheme, which was a applied to Petitioner, violates the 6th Amendment because an offender's imprisonment is dependent upon a factual finding not made by the jury beyond a reasonable doubt or admitted by the defendant.

**Supporting Facts:** On July 5, 2022, Mr. Fenderson received a sentence of 11 years with a maximum potential sentence of 16.5 years on the involuntary manslaughter count. The 5.5-year tail of this sentence was imposed pursuant to Reagan-Tokes. Under S.B. 201, it is presumed that the offender will be released at the expiration of the minimum term. However, the ODRC may rebut the presumption and hold the offender up to the maximum [*sic*] term. R.C. 2929.14(A); R.C. 2929.144; R.C. 2967.271. To rebut the "presumptive" earned early release date," [*sic*] it holds an administrative hearing and makes specific findings to justify keeping the offender beyond that date. One One [*sic*] or more of the following 3 conditions must be present at the time of a hearing to determine if the tail will be imposed. (1) while imprisoned, the offender committed a rule infraction that compromised security of the institution or safety of the prison staff, or threatened or caused harm to an inmate; and DRC evaluates the defendant's behavior while incarcerated as demonstrating a threat to society should the offender be released; (2) the offender has been in extended restrictive housing during the previous year; (3) the offender is classified at a security level of 3 or higher. R.C.2967.271(C). If the DRC finds that at least one of the conditions outlined above applies, it may deny the offender's release and may impose a term of additional imprisonment. Any increase in punishment beyond the presumptive sentence is dependent upon and triggered by one or more findings that are being made by a lone employee of the DRC, an executive agency, see R.C. 2967.271(D) – not by a jury for what the DRC decides is a "reasonable period," up to the maximum term of imprisonment. R.C. 2967.271(D).

**GROUND FIVE:** Ohio's "Reagan Tokes" legislation, S.B. 201's indeterminate sentencing scheme, which was applied to Petitioner, violates substantive due process because it (1) fails to provide a defendant with adequate notice of what conduct can enable the DRC to keep the defendant in prison beyond the presumptive minimum term; and (2) it allows the DRC

to keep a defendant in prison beyond the presumptive minimum sentence on the basis of prison housing and classification decisions that need not be the result of any misconduct by the defendant.

**Supporting Facts:** Under Reagan Tokes, an offender is not given adequate notice as to what conduct on his part will rebut the presumption and trigger an increase his sentence under subsections (A)(1)(a) and (b) of R.C. 2967.271 which applies when he commits "rule infractions" that compromise "the security" of the prison or the staff or its inmates…which demonstrate that he "has not been rehabilitated," or if his behavior during his incarceration "demonstrate[s]" that he "continues to pose a threat to society." On its face the statute fails to give adequate notice of what triggers the additional prison time. The standards of "not been rehabilitated" and "pose a threat to society" are nebulous and subject to differing interpretations. The standards are so vague that an inmate can unknowingly commit acts listed in R.C. 2967.271(C)(1)-(3), which will extend his presumed minimum term of incarceration at the sole discretion of the DRC. The inmate has no way of knowing if what he has done indicates a lack of rehabilitation, the second prong of subsection (A)(1), and creates a threat to society, as required by (A)(2). The offender is uncertain about what conduct could trigger the tail. Moreover, subsections (A)(2) and (A)(3) make it a triggering event that the offender was placed in restrictive housing or was designated at a security level of 3 or above. These are decisions outside of the defendant's prerogative and are effectively unreviewable. The executive's ability to make whatever judgment calls it deems appropriate on these vague standards results in a criminal penalty.

**GROUND SIX:** Ohio's "Reagan Tokes" legislation, S.B. 201's indeterminate sentencing scheme, which was applied to Petitioner, violates procedural due process and the Sixth Amendment by allowing for the extension of a prison sentence based on findings made at a hearing where the prisoner has no guaranteed right to be present, have counsel, confront witnesses, subpoena witnesses or to offer testimony of his own.

**Supporting Facts:** Mr. Fenderson's sentence was imposed under S.B. 201 aka "Reagan Tokes." While R.C. 2967.271 provides for a hearing before the additional prison time is imposed, the statute provides no structure as to how the hearing will be conducted or what rights the defendant will have at a hearing. He is not provided the right to: (1) have a jury determine beyond a reasonable doubt if a triggering circumstance occurred; (2) the right to counsel and to the appointment of counsel if indigent; (3) The right to confront witnesses; (4) The right to call witnesses and require their presence via subpoena, and; (5) the right to offer testimony. Nowhere in the statute are these rights provided.

(*Id.*, pp. 7-16.)

9

On July 27, 2025, Warden Ryan Walters ("Respondent") filed the Return of Writ. (Doc. No. 8.) Fenderson filed a Traverse and a Motion to Compel Respondent to Supplement or Expand the Record on September 23, 2025.  (Doc. Nos. 10, 11.)  On September 30, 2025, Respondent filed Opposition to Motion to Compel Respondent to Supplement or Expand the Record. (Doc. No. 12.) On October 2, 2025, Respondent filed Sur-Reply to Petitioner's Traverse and Motion to Permit Petitioner to Amend Petition. (Doc. No. 13.) On October 7, 2025, Fenderson filed Reply to Opposition/Response to Motion to Compel Respondent to Supplement or Expand the Record. (Doc. No. 14.) On October 16, 2025, Fenderson filed Motion for Leave to Permit Respondent to File Proper Sur-Reply; Opposition to Motion to Permit Petitioner to Amend Petition. (Doc. No. 15.) The Court denied Motion to Permit Petitioner to Amend its Petition (Doc. No. 13) and Motion for Leave to Permit Respondent to File Proper Sur-Reply (Doc. No. 15). (Doc. No. 16.)

### III.    Non-Cognizable Claims

It is well established that, in conducting habeas review, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). As such, the Supreme Court has explained "it is not the province of a federal habeas court to reexamine state-court decisions on state-law questions." *Id.* at 67-68. *See also Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007); *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Thus, a state court's interpretation of state law is binding upon a federal habeas court. *See Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S.Ct. 602, 163 L.Ed.2d 407 (2005); *Bibbs v. Bunting*, 1:16-cv-02069, 2017 WL 4083558, at *15 (N.D. Ohio May 17, 2017). *See also Thompson v. Williams*, 685 F. Supp. 2d 712, 721 (N.D. Ohio 2010) (stating "a federal court may not second-guess a state court's interpretation of its own procedural rules.") (citing *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir.1988)).

"A challenge to a state court's interpretation and application of Ohio's sentencing laws is not cognizable in a federal habeas corpus action." *Allsup v. Sheldon*, No. 3:11CV2210, 2013 WL 3200641, at

*18 (N.D. Ohio June 24, 2013); *Howard v. White,* No. 03–1042, 2003 WL 22146139, at *2 (6th Cir. Sept.16, 2003); *Kipen v. Renico,* No. 02–1742, 2003 WL 21130033 (6th Cir. May 14, 2003). Furthermore, "[w]ide discretion is accorded a state trial court's sentencing decision. Claims arising out of that decision are not generally cognizable upon federal habeas review, unless the petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law." *Kerr v. Smith*, No. 3:07 CV 2990, 2009 WL 88054, at *6 (N.D. Ohio Jan. 12, 2009), citing *Lucey v. Lavigne,* 185 F.Supp.2d 741, 745 (E.D.Mich.2001).

Accordingly, this Court can consider an alleged state court sentencing error only if it violates a petitioner's federal constitutional right to due process or equal protection. *Pulley v. Harris,* 465 U.S. 37, 42 (1984). This court has found the use of the term "due process" in a petition does not change the Court's cognizability analysis because "naked assertions of the denial of rights to 'due process' or 'equal protection' do not fairly present claims that federal constitutional rights were violated." *Porterfield v. McConahay*, No. 4:21-CV-02401-SL, 2023 WL 5434714, at *8 (N.D. Ohio Aug. 4, 2023), *report and recommendation adopted,* No. 4:21-CV-2401, 2023 WL 5433060 (N.D. Ohio Aug. 23, 2023), citing *Rarden v. Warren Corr. Inst.*, No. 1:12-CV-660, 2015 WL 5561380, at *4 (S.D. Ohio Sept. 22, 2015)(rejecting petitioner's argument that the failure to grant a *de novo* hearing was a "due process" violation where petitioner did not support his naked assertions with "supporting federal caselaw or develop any cogent arguments in constitutional terms."); *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000) ("General allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present' claims that specific constitutional rights were violated.")

Respondent argues that because Fenderson's petition challenges his sentence and his sentence of confinement is within state statutory limits, his petition is not cognizable. (Doc. No. 8 at 18-20.) Respondent notes the State and Fenderson provided sentencing memorandums to the trial court, the trial court sentenced

Fenderson to a total of 21 years to 26.5 years, and the Court of Appeals found a "ministerial" error regarding notifications but otherwise found the sentence in accord with Ohio law. (*Id*. at 19, citing Exs. 15-19, 29.) Respondent contends "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." (*Id*., citing *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005)). Respondent asserts that a sentence within state statutory limits is not cognizable, and that a petitioner does not have the right to appeal the length of a non-capital sentence. (*Id*. at 20.) Respondent notes the Ohio Court of Appeals addressed Fenderson's challenge to the Reagan Tokes Act, finding that there were no circumstances in which the ODRC could increase punishment beyond the maximum term permitted by statute or imposed by the sentencing court; and because he is challenging the length of his non-capital sentence, his petition is not cognizable. (*Id*. at 21.)

In addition to the overarching argument that the entire petition is not cognizable due to challenging the length of his sentence, Respondent argues Grounds One, Two and Four are not cognizable for additional separate reasons, addressed below.

In response, Fenderson acknowledges that while "errors in the application of state sentencing guidelines cannot independently support habeas corpus relief" (citing *Kissner v. Palmer*, 826 F.3d 898, 904 (6th Cir. 2016)), and argues that habeas relief is available when a sentence exceeds statutory limits, is wholly unauthorized by law, or where violations of state law or procedure infringe federal constitutional protections. (Doc. No. 10 at 8-9.) Fenderson claims his challenges to his sentence invokes federal constitutional protections, including violations of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v. Washington*, 542 U.S. 296 (2004), and *Alleyne v. United States*, 570 U.S. 99 (2013). (*Id*. at 9.) Fenderson contends his claims implicate both the Sixth and Fourteenth Amendments. (*Id*. at 10.)

**A.  Ground One**

12

As set forth above, in Ground One, Fenderson argues his 14th amendment rights were violated when "the sentencing court sentencing him above the minimum sentence for involuntary manslaughter where no predicate offense exists to support it." (Doc. No. 1.) In addition to the overarching sentencing argument above, Respondent argues Ground One is not cognizable because it is purely a matter of state law and a state court's interpretation of state law binds a federal court sitting in habeas corpus. (Doc. No. 8 at 31-32.) Respondent asserts the Ohio Court of Appeals interpretation of Crim. R. 11(B)(1) does not provide occasion for a federal court to intervene in habeas corpus. (*Id*. at 32.)

Fenderson argues Ground One is cognizable because the trial court relied on "nonexistent or speculative facts to impose the maximum sentence for a hypothetical offense," which violates due process. (Doc. No. 10 at 11.) Fenderson argues that because the predicate felony is unknown, he should have received the minimum sentence. (*Id*. at 15.)

Fenderson raised this claim to the state appellate court and the Ohio Supreme Court. (Doc. No. 8-1, Ex. 28, 33.) The state appellate court, the last state court to review the claim, rejected his arguments:

> {¶ 20} Fenderson entered a plea of guilty to involuntary manslaughter under R.C. 2903.04(A). R.C. 2903.04(A) provides that "[n]o person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony." In his second assignment of error, Fenderson argues that the state failed to produce evidence of a predicate felony offense to support his conviction under the statute. He claims that a predicate felony offense is an element of the offense that had to be found by a jury or admitted to by the defendant. He denies that his guilty plea was an admission to the predicate felony offense since one was not identified. He also contends that because no predicate felony offense was identified, the trial court was required to impose the minimum sentence—i.e., three years. Fenderson questions whether the trial court considered the necessary factors set forth in R.C. 2929.11 and 2929.12, and he again complains that the trial court should have allowed him to present all the facts through witnesses' testimony, which, he maintains, would have negated the misinformation contained in the PSI and the state's sentencing memorandum.
>
> {¶ 21} The state responds that by the express terms of his plea, Fenderson admitted that he "cause[d] the death of another * * * as a proximate result of * * * committing or attempting to commit a felony." It points out that

13

R.C. 2903.04(A) is a first-degree felony that carries an indefinite minimum sentence of three years to 11 years under R.C 2929.14(A)(1)(a), and it was within the trial court's discretion to impose a prison sentence within that statutory range. It emphasizes that the court was not required to make any finding of fact in order to sentence Fenderson to a term falling within the statutory range.

{¶ 22} Under Crim.R. 11(B)(1), a plea of guilty is a complete admission of the defendant's guilt. When a person enters a guilty plea, he waives the right to require the state to prove his guilt beyond a reasonable doubt at a trial. Crim.R. 11(C)(2)(c). "The guilty plea itself provides all the necessary proof of the elements of the offense and is sufficient evidence to support the conviction." *State v. Stroub*, 3d Dist. Wyandot No. 16-10-02, 2011-Ohio-169, ¶ 6, citing *State v. Fuller,* 12th Dist. Butler No. CA2008-09-240, 2009-Ohio-5068, ¶ 105.

{¶ 23} Here, when Fenderson entered a plea of guilty to involuntary manslaughter—and specifically, involuntary manslaughter under R.C. 2903.04(*A*)—he admitted the elements of that offense—i.e., he admitted that he committed an underlying felony that proximately caused the victim's death. Because he admitted the elements of the offense, the state was not required to "prove" at the sentencing hearing that Fenderson committed a felony that proximately caused E.C.'s death, nor was the court required to make any such finding. Fenderson suggests that without a predicate offense having been specifically identified, it is possible that the "unknown predicate offense is actually a misdemeanor" or "an offense that doesn't constitute a predicate" *or* that no underlying felony occurred at all. However, that is *not* possible here because by entering a guilty plea, Fenderson *admitted* that he committed a felony and that that felony proximately caused the victim's death.

{¶ 24} As to Fenderson's claim that the trial court was obligated to impose the minimum possible sentence here or find certain facts to support a greater sentence, this is simply wrong. Under R.C. 2929.14(A)(1), the trial court was authorized to impose a sentence of three, four, five, six, seven, eight, nine, ten, or 11 years. It was not obligated to impose the minimum possible sentence here, nor was it required to make any particular findings in order to impose a sentence greater than the minimum sentence. *State v. Elmore*, 122 Ohio St.3d 472, 2009-Ohio-3478, 912 N.E.2d 582, ¶ 41, quoting *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 100 (explaining that " 'trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for maximum, consecutive, or more than the minimum sentences' "). No judicial-factfinding was required here, and none took place.

14

{¶ 25} In support of his position that the court engaged in judicial fact-finding in imposing a sentence other than the minimum sentence, Fenderson relies on the U.S. Supreme Court's decision in *Alleyne v. United States*, 570 U.S. 99, 100, 186 L.Ed.2d 314, 133 S.Ct. 2151 (2013), and our decision in *State v. Mejia*, 2020-Ohio-6870, 164 N.E.3d 1177, ¶ 25 (6th Dist.). Neither of these cases is applicable here.

{¶ 26} In *Alleyne,* a jury convicted the defendant of using or carrying a firearm in relation to a crime of violence. The term of imprisonment for *using or carrying* a firearm in relation to a crime of violence was a minimum of five years. The term of imprisonment increased to a minimum of seven years if the firearm was *brandished.* And the term of imprisonment increased to a minimum of ten years if the firearm was *discharged.* The jury found that the defendant used or carried a firearm during and in relation to a crime of violence, but it made no finding that the firearm was brandished. Nevertheless, the presentence report recommended a seven-year sentence. The defendant argued that because the jury did not find beyond a reasonable doubt that he brandished the firearm, he was subject only to the five-year minimum. The district court concluded that "brandishing" was a sentencing factor that it could find by a preponderance of evidence. After determining that the evidence supported a finding of brandishing, it sentenced the defendant to seven years' imprisonment. The Court of Appeals affirmed.

{¶ 27} The U.S. Supreme Court acknowledged that the Sixth Amendment provides an accused the right to a trial by an impartial jury. "This right, in conjunction with the Due Process Clause, requires that each element of a crime be proved to the jury beyond a reasonable doubt." *Id.* at 105. The Court, therefore, addressed whether "brandishing" was an element of the crime that must be found by a jury or whether it could fairly be characterized as a sentencing factor for the court's consideration.

{¶ 28} The Court explained that a fact that increases the prescribed range of penalties to which a criminal defendant is exposed is an element of the crime, which a jury must find beyond a reasonable doubt. By extension, a fact that increases the range—i.e., either the floor or the ceiling—of a potential sentence produces a new penalty and is an element of the offense. As such, "the core crime and the fact triggering the mandatory minimum sentence together constitute a new, aggravated crime, each element of which must be submitted to the jury." *Id.* at 114. The Court concluded that "because the fact of brandishing aggravates the legally prescribed range of allowable sentences, it constitutes an element of a separate, aggravated offense that must be found by the jury" beyond a reasonable doubt. *Id.* at 115.

{¶ 29} The Court took care to clarify that its holding—i.e., that a fact that increases a mandatory minimum sentence must be submitted to the jury—

15

does not mean that a jury must find *any* fact that influences judicial discretion. Rather, it explained, "broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment." *Id.* at 116.

{¶ 30} *Alleyne* is wholly irrelevant to the facts presented here. Fenderson entered a plea of guilty to involuntary manslaughter under R.C. 2903.04(A). By doing so, he admitted each element of the offense, including that he committed a felony that proximately caused the victim's death. Under R.C. 2903.04(C), a violation of R.C. 2903.04(A) is a first-degree felony, regardless of the identity of the underlying felony. R.C. 2929.14(A)(1)(a) prescribes the allowable sentencing range. That range—the floor and ceiling—is not aggravated based on the identity of the underlying felony.

{¶ 31} We now turn to *Mejia*, 2020-Ohio-6870, 164 N.E.3d 1177. In *Mejia,* the defendant was charged with engaging in sexual conduct with a 12-year-old girl. He was indicted on three counts: (1) rape in violation of R.C. 2907.02(A)(1)(b) and (B) (Count 1), (2) rape in violation of R.C. 2907.02(A)(1)(b) and (B) with a specification that he "purposely compelled the victim to submit by force or threat of force" (Count 2), and (3) sexual battery in violation of R.C. 2907.03(A)(5) and (B) (Count 3). He entered a plea of guilty to Count 1 only. The trial court imposed a prison term of 25 years. It explained: "As far as the prison sentence, the Court has no option in this case. The prison sentence is mandatory, and on Count 1, the offense of rape being a felony of the first degree, the Court would impose a 25 year to life prison sentence that is mandatory." *Mejia at* ¶ 7.

{¶ 32} R.C. 2907.02(B) specifies that an offender convicted under (A)(1)(b) "shall be sentenced to a prison term or term of life imprisonment" under R.C. 2971.03. It also states that the court may impose upon the offender a term of life without parole under R.C. 2971.03(A) if an offender has a previous conviction under (A)(1)(b), if the offender caused serious physical harm to the victim, or if the victim is less than ten years of age. Assuming the offense was committed after January 2, 2007, life without parole is not imposed, and R.C. 2971.03(A) is inapplicable, R.C. 2971.03(B) provides three possible indefinite sentences that may be imposed instead: 10 years to life, 15 years to life, or 25 years to life:

(a) Except as otherwise required in division (B)(1)(b) or (c) of this section, *a minimum term of ten years* and a maximum term of life imprisonment.

(b) If the victim was less than ten years of age*, a minimum of fifteen years* and a maximum of life imprisonment.

(c) If the offender purposely compels the victim to submit by force or threat of force, or if the offender previously has been convicted of or pleaded guilty to violating division (A)(1)(b) of section 2907.02 of the

Revised Code or to violating an existing or former law of this state, another state, or the United States that is substantially similar to division (A)(1)(b) of that section, or if the offender during or immediately after the commission of the offense caused serious physical harm to the victim, *a minimum term of twenty-five years* and a maximum of life imprisonment.

(Emphasis added.)

{¶ 33} We recognized that because the victim was 12 years old, R.C. 2971.03(B)(1)(b) was inapplicable. Thus, the trial court's imposition of a prison sentence of 25 years to life would be proper only if R.C. 2971.03(B)(1)(c) applied. Under that section, there are three ways that a 25-years to life sentence could be imposed: (1) use of force or threat of force in the commission of the offense; (2) a prior conviction for rape of a child under 13; or (3) serious physical harm caused to the victim of the offense. *Mejia* at ¶ 22, quoting *State v. Morris*, 5th Dist. Delaware No. 19 CAA 12 0069, 2020-Ohio-5361, ¶ 26. The state argued that "the use or threat of force" element was applicable.

{¶ 34} On appeal, we were left to resolve "whether a defendant who pleads guilty to rape under R.C. 2907.02(A)(1)(b) and View more Negative Treatments(B) [may] be sentenced to 25 years to life under R.C. 2971.03(B)(1)(c) when the indictment fails to include a specification that force was used in the commission of the rape, the record is silent as to the issue of force, and the trial court does not make a determination that force was used in the commission of the rape at the time of accepting the plea or sentencing the defendant[.]" *Mejia* at ¶ 29. We looked to the Ohio Supreme Court's decision in *State v. Bowers,* 163 Ohio St.3d 28, 2020-Ohio-5167, 167 N.E.3d 947, for guidance.

{¶ 35} In *Bowers*, as in *Mejia,* the defendant pled guilty to rape under View more Negative TreatmentsR.C. 2907.02(A)(1)(b) and View more Negative Treatments(B). He was sentenced to 25 years to life in prison under R.C. 2971.03(B)(1)(c) even though force or threat of force was not specified in the indictment and the sentencing court made no factual finding that force or threat of force had been used. The First District reversed. It found that the sentence was not authorized because none of the prerequisites under R.C. 2971.03(B)(1)(c) was present—i.e., the use or threat of force in the commission of the offense, a prior conviction for rape of a child under 13, or serious physical harm caused to the victim. The Ohio Supreme Court affirmed the First District. It concluded that "a sentence of 25 years to life under R.C. 2971.03(B)(1)(c) may not be imposed without a finding that the victim was compelled to submit by force or one of the other factors in R.C. 2971.03(B)(1)(c) applied. The court rejected the state's argument that no express findings must be made under R.C. 2971.03(B)(1)(c) so long as there is evidence of force in the record. *Bowers* at ¶ 24.

17

{¶ 36} Consistent with *Bowers,* we concluded that Mejia's sentence was contrary to law because neither the court nor the parties mentioned force at either the plea hearing or the sentencing hearing and the indictment was silent as to the issue of force under the count to which the defendant pled. *Mejia* at ¶ 34. Importantly, Count 2 contained a "force or threat of force" specification; Count 1 did not. The defendant entered a plea only to Count 1, therefore, he did not admit that he used force or threat of force. We reversed and remanded the case for resentencing.

{¶ 37} Here, Fenderson entered a guilty plea to involuntary manslaughter under R.C. 2903.04(A). By entering a plea of guilty, he admitted the elements of that offense. As such, he admitted that he committed an underlying felony that proximately caused the victim's death. The potential sentence for a violation of R.C. 2903.04(A) does not vary based on which underlying felony was committed.

{¶ 38} Certainly, if Fenderson had not entered a plea of guilty and the matter had been tried to a jury, the state would have been required to prove that an underlying felony occurred (and that it caused the victim's death), which would necessarily have required it to identify the alleged felony. But the state was relieved of this duty when Fenderson voluntarily entered a guilty plea to the charge and *admitted* that he committed a felony that proximately caused E.C.'s death.

{¶ 39} Finally, Fenderson contends that "no basis exists to sentence a defendant to 11 years as opposed to 3 years if the predicate offense is unknown." He insists that without knowing the underlying predicate offense, a sentencing court "does not have sufficient facts to arrive at <u>any</u> sentence within the range above the minimum." Fenderson acknowledges that the trial court has discretion to impose a sentence using factors set forth in R.C. 2929.11 and 2929.12, but maintains that the factors are offense and offender specific and "depend on the nature of the felony predicate."

{¶ 40} In essence, Fenderson is challenging the length of his sentence—he believes he should have been sentenced to a minimum term of three years and a maximum term of four-and-a-half years. We review sentencing challenges under R.C. 2953.08(G)(2). The statute allows an appellate court to increase, reduce, or otherwise modify a sentence or vacate the sentence and remand the matter for resentencing only if it clearly and convincingly finds either of the following:

  (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

18

(b) That the sentence is otherwise contrary to law.

R.C. 2953.08(G)(2).

{¶ 41} R.C. 2929.11 and 2929.12 are not listed in the statutory provisions under R.C. 2953.08(G)(2)(a). *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649 ¶ 28. As such, an appellate court may not rely upon R.C. 2953.08(G)(2)(a) to "modify or vacate a sentence based on the lack of support in the record for the trial court's finding under R.C. 2929.11 and 2929.12." *Id.* at ¶ 29. Moreover, R.C. 2953.08(G)(2)(b) does not allow an appellate court to independently weigh the evidence and substitute its judgment for that of the trial court regarding the appropriate sentence under R.C. 2929.11 and 2929.12, or modify or vacate a sentence based on the lack of support in the record for the trial court's findings under those statutes. *Jones* at ¶ 39, 41-42; *see also State v. Toles*, 166 Ohio St.3d 397, 2021-Ohio-3531, 186 N.E.3d 784, ¶ 10 (Brunner, J., concurring) (R.C. 2953.08 "precludes second-guessing a sentence imposed by a trial court based on its weighing of the considerations in R.C. 2929.11 and 2929.12.").

{¶ 42} Importantly, the Ohio Supreme Court has made clear that "neither R.C. 2929.11 nor 2929.12 requires a trial court to make any specific factual findings on the record." *Jones* at ¶ 20. In fact, the trial court's consideration of the factors set forth in R.C. 2929.11 and 2929.12 is presumed even on a silent record. *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1; *State v. Cyrus*, 63 Ohio St.3d 164, 166, 586 N.E.2d 94 (1992).

{¶ 43} Here, we know that the trial court considered R.C. 2929.11 and 2929.12 because it said so on the record at the sentencing hearing, and reiterated it in its judgment entry. To the extent that Fenderson claims that the trial court lacked sufficient facts upon which to weigh these factors, we note that under R.C. 2929.19(B)(1)(a), when sentencing an offender, a trial court must consider the (1) the record; (2) any information presented at the hearing by the offender, the prosecuting attorney, the victim or the victim's representative, and any other person approved by the trial court; (3) the presentence investigation report; and (4) any victim impact statement. The trial court said that it considered this information. Consideration of this information supplied the trial court with the facts necessary to render an appropriate sentence under R.C. 2929.11 and 2929.12. Its sentence was within the allowable range permitted by R.C. 2929.14(A)(1). Fenderson's sentence was not contrary to law under R.C. 2953.08(G)(2)(b).

{¶ 44} We find Fenderson's second assignment of error not well-taken.

*State v. Fenderson*, 2023-Ohio-2903, ¶¶ 20-44.

19

Here, while Fenderson couches Ground One as a Constitutional violation, it is a matter of the Ohio Court of Appeals interpreting Ohio law, which is not cognizable. *See Bradshaw v. Richey*, 546 U.S. at 76; s*ee also Thompson v. Williams*, 685 F. Supp. 2d at 721 (stating "a federal court may not second-guess a state court's interpretation of its own procedural rules.") Moreover, Ground One at its core is a challenge to Fenderson's length of sentence, which is not cognizable. *Allsup v. Sheldon*, 2013 WL 3200641, at *18.

Accordingly, and for all the reasons set forth above, it is recommended Ground One be dismissed as non-cognizable.

**B.  Ground Two**

As noted above, in Ground Two, Fenderson alleges his rights under the 6th Amendment were violated by judicial fact-finding which increased his sentence by ten years on a Repeat Violent Offender Specification where the facts were not admitted to by him or found by a jury. (Doc. No. 1.) Respondent argues Ground Two is not cognizable because challenging the imposition of a Repeat Violent Offender ("RVO") specification has been held non-cognizable in this district, and it is a pure application of state law. (Doc. No. 8 at 37.) Fenderson did not address the cognizability of Ground Two.

Courts in this district have found habeas grounds alleging erroneous application of Ohio's Repeat Violent Offender Specification non-cognizable on habeas corpus review because it is a matter of state law. *Krug v. Sheldon*, No. 1:20-CV-02280-BMB, 2023 WL 9422383, at *31 (N.D. Ohio Sept. 19, 2023), *report and recommendation adopted,* No. 1:20-CV-2280, 2024 WL 310095 (N.D. Ohio Jan. 26, 2024); *Hunt v. Eppinger*, No. 1:20-CV-2666-DAR, 2024 WL 1348642, at *13 (N.D. Ohio Jan. 23, 2024), *report and recommendation adopted,* No. 1:20-CV- 2666, 2024 WL 1347602 (N.D. Ohio Mar. 29, 2024) (finding challenge to 19-year sentence with an RVO specification and imposition of consecutive sentences non-cognizable).

Accordingly, it is recommended that Ground Two be dismissed as non-cognizable.

## C. Ground Three

As set forth above, in Ground Three, Fenderson argues his due process rights were violated when the trial court considered at sentencing a victim impact letter that was not provided to defense counsel. (Doc. No. 1.) Fenderson argues he should have been afforded the opportunity to rebut any materially false information provided in the letter. (*Id.*) Respondent argues this claim is non-cognizable as it is matter of the state appellate court interpreting state law. (Doc. No. 8 at 45, 21-22.) Fenderson did not specifically address the cognizability of Ground Three.

Fenderson raised this claim on direct appeal, and upon review for plain error the state appellate court rejected it as follows:

> {¶ 54} In his fourth assignment of error, Fenderson argues that he was deprived of a fair sentencing proceeding in violation of his due process rights because the trial court relied on a letter from the victim's mother, which was not provided to defense counsel and was not read into the record. He claims that due process required that he be afforded the opportunity to rebut any materially false, derogatory information relied upon by the sentencing judge. He maintains that the only way to protect himself from being sentenced based upon false information was to provide him with notice and an opportunity to respond to the information upon which the sentencing court relied. And because Fenderson was not provided a copy of the letter, he claims that he was unable to rebut the statement or determine if it contained materially false information.

> {¶ 55} The state responds that Fenderson failed to object or otherwise raise this issue before the trial court, therefore, he has waived all but plain error. It maintains that the trial court properly considered the letter from E.C.'s mother under R.C 2930.14(A), and was not required to give copies of the victim's mother's statement to Fenderson or his counsel. Furthermore, the state claims, even if the letter from E.C.'s mother had been disclosed to Fenderson, his ability to challenge its validity would have been limited because a defendant does not have the right to respond to a victim's statement unless it includes new material facts and the court relies on those facts. The state insists that nothing in the record indicates that the letter from E.C.'s mother included any new material facts, or that any such facts were relied upon by the trial court in sentencing Fenderson, and Fenderson has failed to demonstrate that his sentence clearly would have been different but for the trial court's consideration of the letter from E.C.'s mother.

21

{¶ 56} The state correctly observes that Fenderson did not object to the victim's mother's letter being provided to the court and not read aloud without allowing defense counsel to read it. We, therefore, review for plain error. Plain error is error that affects substantial rights. Crim.R. 52(B). In determining whether plain error occurred, we must examine the alleged error in light of all of the evidence properly admitted at trial. *State v. Hill*, 92 Ohio St.3d 191, 203, 749 N.E.2d 274 (2001). Plain error should be found "only in exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.,* citing *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. "Reversal is warranted only if the outcome of the trial clearly would have been different absent the error." *Id.,* citing *Long* at paragraph two of the syllabus.

{¶ 57} In *State v. Shackleford*, 2d Dist. Montgomery No. 24303, 2011-Ohio-4722, the court at the sentencing hearing read part of a letter that the victim had written describing the crime's impact on her physically, psychologically, and emotionally. The court cited the crime's impact on the victim when explaining its sentencing decision. On appeal, the defendant complained that before the hearing, neither he nor trial counsel saw the victim's letter, and the court did not disclose its full contents. Like Fenderson, the defendant did not object in the trial court, thus the appellate court applied a plain-error analysis.

{¶ 58} The Second District Court of Appeals obtained the letter from the trial court and reviewed its contents. It described that the letter was essentially a rewording of the victim impact portion of the PSI, which alone did not result in a different outcome. But the court went on to say that even if the letter had been fully disclosed to him before the sentencing hearing, the defendant's ability to challenge its validity would have been limited because "[a] defendant does not have the right to respond to a victim's statement unless the statement includes new material facts and the court relies on those facts." *Id.* at ¶ 25, citing R.C. 2930.14(B). It also cited to the Sixth Circuit Court of Appeals' decision in *U.S. v. Meeker*, 411 F.3d 736, 742 (6th Cir. 2005), where the court pointed out that "not having, before the sentencing hearing, emotional-impact evidence from a victim ultimately matters little because the defendant cannot really rebut the evidence." *Shackleford* at ¶ 25, citing *Meeker* at 742. Therefore, the court concluded, "[b]ecause this evidence [is] essentially irrebuttable, even if it had been disclosed to him in advance of his sentencing hearing, [the defendant] can show no prejudice warranting correction under Rule 52(b) [the federal plain-error rule]." (Internal citations and quotations omitted.) *Id.* The Second District found no plain error.

{¶ 59} Likewise, the record on appeal contains a copy of the letter from E.C.'s mother. In terms of facts, it contains no information different from that presented by the state at sentencing—that Fenderson was responsible for planning the murder. Similar to E.C.'s ex-fiancee's statements at sentencing,

22

the letter also discusses the emotional impact the victim's death has had on his family, and especially his mother and daughters. The emotional impact on the family is "essentially irrebuttable." And no new facts were raised. Accordingly, we find that the failure to provide Fenderson a copy of the letter resulted in no prejudice to Fenderson. The outcome would not have been different had the letter been disclosed.

{¶ 60} We find Fenderson's fourth assignment of error not well-taken.

*State v. Fenderson*, 2023-Ohio-2903, ¶¶ 54-60.

As this district has previously explained:

"It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted))."

*Baskerville v. Sheldon,* No. 5:18CV2277, 2019 WL 13163556, at *20 (N.D. Ohio Oct. 30, 2019), *report and recommendation adopted,* No. 5:18CV2277, 2022 WL 969693 (N.D. Ohio Mar. 31, 2022), citing *Ream v. Bunting*, No. 3:15-cv-00313, 2017 WL 7805229, at *17 (N.D. Ohio April 12, 2017), *report and recommendation adopted by* 2018 WL 1083266 (N.D. Ohio Feb. 28, 2018).

Here, the state appellate court interpreted Ohio law and determined Fenderson's claim was without merit. The appellate court determined Fenderson did not object to the letter at the time it was provided to the trial court, was not entitled under Ohio law to see the letter, the letter did not contain information different from what was presented by the State at sentencing, the emotional impact evidence was "essentially irrebuttable", and the outcome would not have been different had Fenderson received a copy of the letter. Any error of state law is not reviewable in habeas corpus.

For the forgoing reasons, the undersigned recommends finding Ground Three not cognizable.

23

### D. Grounds Four, Five, and Six

As set forth above, in Grounds Four, Five, and Six, Fenderson challenges the constitutionality of the sentencing scheme under which he was sentenced, known as the Reagan Tokes Law. (Doc. No. 1.)

In Ground Four, Fenderson argues the Reagan Tokes law violates the doctrine of separation of powers because it provides discretion to the executive branch (Ohio Department of Rehabilitation and Corrections ("ODRC")) to keep the defendant incarcerated beyond the judicially imposed presumptive minimum sentence. (Doc. No. 1.) Respondent argues Ground Four is not cognizable because it raises a separation of powers argument concerning state branches of government which is a matter of state law and thus non-cognizable. (Doc. No. 8 at 53.) Fenderson did not specifically address the cognizability of Ground Four.

When considering a separation of powers claim concerning sentencing, this court found the claim not cognizable because the separation of powers between state branches of government is a matter of state law, and "a federal court may not grant habeas relief based on a 'perceived error of state law.'" *Herring v. Hill*, No. 1:21-CV-01496, 2023 WL 5756161, at *9 (N.D. Ohio Aug. 18, 2023), *report and recommendation adopted,* No. 1:21 CV 1496, 2023 WL 5748714 (N.D. Ohio Sept. 6, 2023), citing *Witherspoon v. Campbell*, No. 19-2258, 2020 U.S. App. LEXIS 11147, at *3 (6th Cir. 2020) (quoting *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000)).

Because Ground Four raises a separation of powers claim concerning sentencing, which involves state branches of government, it is a matter of state law and not cognizable in habeas review.

For the foregoing reasons, the undersigned recommends finding Ground Four not cognizable.

In Ground Five, Fenderson argues Reagan Tokes violates substantive due process because it fails to provide a defendant notice of what conduct ODRC can consider to keep a defendant in prison beyond the presumptive minimum term. (Doc. No. 1.) In Ground Six, Fenderson argues Reagan Tokes violates

procedural due process and the Sixth Amendment because it allows for the extension of a prison sentence based on findings made at a hearing in which the prisoner has no guaranteed rights, including to be present, have counsel, confront witnesses, subpoena witnesses, or offer his own testimony. (*Id*.)

Respondent argues Grounds Five and Six are non-cognizable under the principle in *Bradshaw v. Richey,* that a state court's interpretation of state law is binding upon a federal habeas court. (Doc. No. 8 at 52.) Fenderson does not specifically address cognizability of Ground Five. Fenderson claims Ground Six is cognizable because Reagan Tokes violates procedural due process. (Doc. No. 10 at 50.) Fenderson contends the Constitution guarantees the right to be heard when the state seeks to infringe on a liberty or property right, and while Reagan Tokes does provide for a hearing, the law does not provide specific details on the rights a defendant will have at the hearing. (*Id*.)

The state appellate court considered Fenderson's challenges to Reagan Tokes and rejected them as follows:

> {¶ 61} In his fifth through eighth assignments of error, Fenderson challenges the constitutionality of the sentencing scheme under which he was sentenced. He claims that S.B. 201—commonly referred to as the Reagan Tokes Law—violates the Sixth Amendment and Article I, Section 5 of the Ohio Constitution because a defendant's imprisonment is dependent upon a factual finding not made by the jury beyond a reasonable doubt or admitted by the defendant. He claims that it violates the doctrine of separation of powers because it delegates to the executive branch discretion to keep the defendant in prison beyond the judicially-imposed presumptive minimum sentence. He claims that it violates substantive due process because it fails to provide a defendant with adequate notice of what conduct can enable ODRC to keep the defendant in prison beyond the presumptive minimum term and allows ODRC to keep a defendant in prison beyond the presumptive minimum term on the basis of prison housing and classification decisions resulting from any misconduct by the defendant. And he claims that it violates procedural due process by allowing for the extension of a prison sentence based on findings made at a hearing where the prisoner has no guaranteed right to be present, have counsel, confront witnesses, subpoena witnesses, or offer testimony of his own.
>
> {¶ 62} This court has addressed these challenges to the constitutionality of S.B. 201 on many occasions. In *State v. Bothuel,* 6th Dist. Lucas No. L-20-

25

1053, 2022-Ohio-2606, ¶ 21-23, we found that S.B. 201 does not violate the constitutional right to a trial by jury because there are no circumstances under which ODRC may increase punishment beyond the maximum term permitted by statute or imposed by the sentencing court. *See also State v. Williams,* 6th Dist. Lucas No. L-21-1152, 2022-Ohio-2812, ¶ 14-16. In *State v. Gifford*, 6th Dist. Lucas No. L-21-1201, 2022-Ohio-1620, ¶ 23-36, we held that S.B. 201 does not violate principals of separation of powers because the trial court—not the executive branch—imposes both the minimum and maximum sentences. *See also State v. Stenson*, 6th Dist. Lucas No. L-20-1074, 2022-Ohio-2072, ¶ 7-20; and *Bothuel* at ¶ 7-20; *State v. Lamar,* 6th Dist. Wood No. WD-21-055, 2022-Ohio-2979, ¶ 125; *State v. Blanton,* 6th Dist. Lucas No. L-22-1225, 2023-Ohio-2242, ¶ 31. In *Williams* at ¶ 24-28, we rejected arguments similar to Fenderson's substantive due process challenge and held that S.B. 201 is not void for vagueness because standards for conduct are specified in the statute. And in *Stenson* at ¶ 22-34, we held that S.B. 201 does not, on its face, violate the constitutional right to due process because it cannot be said at this juncture that the Law cannot be applied constitutionally in any circumstances. *See also Bothuel* at ¶ 24-44; *State v. Eaton*, 2022-Ohio-2432, 192 N.E.3d 1236 (6th Dist.) (Mayle, J., concurring) (where, on issue of due process, lead decision analogized additional term hearings to parole/probation *release* decisions and found that procedural safeguards afforded defendants under Reagan Tokes Law are sufficient to pass constitutional muster, and concurring decision analogized additional term hearings to parole/probation *revocation* decisions and found that while failing to set forth adequate process in the statute itself, Reagan Tokes Law is nevertheless capable of being enforced in a manner consistent with process due an offender); *Lamar* at ¶ 125 (adopting due process analysis set forth in *Eaton's* concurring decision); *Williams* at ¶ 23; *Blanton* at ¶ 31.

{¶ 63} The Ohio Supreme Court has now considered—and rejected—most of Fenderson's constitutional challenges to the Reagan Tokes Law. In *State v. Hacker*, Slip Opinion No. 2023-Ohio-2535, the Ohio Supreme Court held that the Reagan Tokes Law does not violate the separation of powers doctrine, does not violate the right to a jury trial, is not void for vagueness, and on its face, does not violate due process.

{¶ 64} First, the court rejected the position that the Reagan Tokes Law violates the separation-of-powers doctrine based on the authority granted to DRC—the executive branch—to maintain an offender's incarceration beyond the minimum prison term imposed by a trial court. It characterized the Reagan Tokes Law as "demonstrat[ing] the interplay among the three branches of government," but not "infring[ing] on the power of the courts." *Id.* at ¶ 13.

{¶ 65} The court explained the role of the three branches under S.B. 201:

26

[T]he legislative branch "define[s] crimes," "fixes the penalty," and "provide[s] such discipline and regulations for prisoners, not in conflict with the fundamental law, as the legislature deems best." [*State ex rel. Atty. Gen. v. Peters,* 43 Ohio St. 629, 647-648, 4 N.E. 81, 85 (1885).] Thus, with the Reagan Tokes Law, the General Assembly established indefinite sentencing for offenders convicted of eligible felonies and a scheme for offender discipline by the DRC. The judicial branch determines whether a person is guilty of an offense and, after a finding of guilt, imposes a prison sentence within the bounds established by the legislature. *Id.* at 647-648, 4 N.E. 81; *see also State ex rel. Bray v. Russell*, 89 Ohio St.3d 132, 136, 729 N.E.2d 359 (2000). And "[p]rison discipline is an exercise of executive power." *Id.*

*Hacker* at ¶ 15, quoting *Peters* at 647-648.

{¶ 66} The court emphasized that "[o]nce the trial court imposes minimum and maximum prison terms under R.C. 2929.14(A)(1)(a) or (2)(a), the sentence for the offender has been set"—the DRC may maintain the offender's incarceration only if it determines that the presumption of release has been rebutted, and only within the bounds set by the trial court. *Id.* at ¶ 16. As such, it concluded, "[i]t does not impede the court's exercise of its judicial powers." *Id.*

{¶ 67} In reaching this conclusion, the Ohio Supreme Court relied on *Woods v. Telb*, 89 Ohio St.3d 504, 733 N.E.2d 1103 (2000), *superseded by statute on other grounds as stated in State v. Singleton*, 124 Ohio St.3d 173, 2009-Ohio-6434, 920 N.E.2d 958, where the court held that the postrelease-control statute did not violate the separation-of-powers doctrine or the right to Due Process even though it vested the parole board with authority to determine whether and how long an offender would be subject to postrelease control and authorized it to sanction offenders for violating the conditions of their postrelease control. In *Woods,* the court reasoned that the conditions of postrelease control were part of the sentence imposed by the trial court, "the power to determine the duration of postrelease control and the sanctions for an offender's violation of postrelease-control conditions was consistent with the authority that had been delegated to the APA in the past under a prior system of parole," and "the authority of the judiciary was not impeded by the APA's performance of its disciplinary function." *Hacker* at ¶ 22.

{¶ 68} In sum, the Ohio Supreme Court determined that the Reagan Tokes Law was analogous to that of the post-release control statute that it found constitutional in *Woods.* It stressed that under the Reagan Tokes Law, "[s]hould the DRC determine that the presumption of release is rebutted as the result of an offender's behavior during his incarceration, the additional

27

time that the offender may have to serve is limited by the sentence that has already been imposed by the trial court."

{¶ 69} Second, the court disagreed that R.C. 2967.271 violates the right to a jury trial because it authorizes the DRC to maintain an offender's incarceration beyond the minimum prison term imposed by the trial court without any jury findings to support the extended incarceration. It acknowledged that under *Apprendi*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435, "'[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' " *Hacker* at ¶ 27, quoting *Apprendi* at 490. But it emphasized that under S.B. 201, the *trial court* has the discretion to sentence him to any minimum sentence within the appropriate range, and the maximum sentence is calculated based on the minimum sentence. It concluded that "[b]ecause no determination by the DRC regarding [the offender's] behavior while in prison will change the range of penalties prescribed by the legislature and imposed by the trial court, the right to a jury trial is not implicated." *Id.* at ¶ 28.

{¶ 70} Third, the court concluded that S.B. 201 is not void for vagueness. It found that the Law gives adequate notice of what is prohibited conduct— "'infractions or violations [that] demonstrate that the offender has not been rehabilitated.'" *Hacker* at ¶ 31, quoting R.C. 2967.271(C)(1)(a). It explained that "[t]he infractions or violations that may 'demonstrate that the offender has not been rehabilitated' are those 'that involve[ ] compromising the security of a state correctional institution, compromising the safety of the staff of a state correctional institution or its inmates, or physical harm or the threat of physical harm to the staff of a state correctional institution or its inmates, or * * * a violation of law that was not prosecuted.' " *Id.* at ¶ 32, quoting R.C. 2967.271(C)(1)(a). The Ohio Supreme Court disagreed that the DRC is given "unfettered discretion" to determine whether certain infractions warrant maintaining an offender's incarceration. It observed that the DRC is authorized to make similar determinations in a variety of other contexts, thus, it reasoned, "[a]llowing the DRC some discretion does not, on its own, make the Reagan Tokes Law unconstitutionally vague." *Id.* at ¶ 34.

{¶ 71} Finally, the Ohio Supreme Court concluded that the Reagan Tokes Law does not, on its face, violate the right to due process. As an initial matter, it recognized that offenders have a liberty interest in not being held beyond the minimum prison term imposed by a trial court. It explained that because "DRC's discretion to maintain an offender's incarceration beyond the minimum prison term imposed by the trial court is curtailed by R.C. 2967.271(B)," there is a "presumption that an offender will be released at the completion of his minimum sentence," which "can be rebutted based on

28

the offender's behavior while incarcerated," thereby giving rise to an "interest that entitles offenders to due-process protection." *Id.* at ¶ 36, citing R.C. 2967.271(C). The court acknowledged that "[b]ecause a liberty interest is at stake," "due process requires a hearing before offenders are deprived of that interest." *Id.* at ¶ 37.

{¶ 72} The court observed that R.C. 2967.271(C) provides for a hearing. But while the offenders argued that these hearings are inadequate, the court stressed that their challenge was a facial challenge to the law itself—"'the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid.'" *Id.* at ¶ 38, quoting *United States v. Salerno*, 481 U.S. 739, 745, 95 L.Ed.2d 697, 107 S.Ct. 2095 (1987). It explained that "[t]he fact that the law 'might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid.'" *Id.,* quoting *id.* The Ohio Supreme Court refused to speculate about hypothetical or imaginary scenarios where the law may be applied in a manner that might violate an offender's due process rights. It did, however, leave open the possibility that "the application of the DRC's policies made under R.C. 2967.271(C) would be subject to review as as-applied challenges, should the facts of a specific case so warrant." *Id.* at ¶ 39.

{¶ 73} For the reasons explained in our various decisions, and as recently pronounced by the Ohio Supreme Court in *Hacker*, we find Fenderson's fifth, sixth, seventh, and eighth assignments of error not well-taken.

*State v. Fenderson*, 2023-Ohio-2903, ¶¶ 61-73.

Here, the state appellate court relied on Ohio Supreme Court precedent in *State v. Hacker*, 173 Ohio St.3d 219, 2023-Ohio-2535, 229 N.E.3d 38, which held that the "Reagan Tokes Law does not violate the separation of powers doctrine, does not violate the right to a jury trial, is not void for vagueness, and on its face, does not violate due process." *Fenderson*, 2023-Ohio-2903, ¶63.  A state court's interpretation of state law is binding upon a federal habeas court. *See Bradshaw*, 546 U.S. at 76; *Bibbs v. Bunting*, 1:16-cv-02069, 2017 WL 4083558, at *15 (N.D. Ohio May 17, 2017). As stated previously, "[a] challenge to a state court's interpretation and application of Ohio's sentencing laws is not cognizable in a federal habeas corpus action." *Allsup*, 2013 WL 3200641, at *18; *Howard v. White,* No. 03–1042, 2003 WL 22146139, at *2 (6th Cir. Sept.16, 2003).

29

For all of the foregoing reasons, the undersigned recommends Grounds Five and Six be dismissed as non-cognizable.

## IV.     Exhaustion and Procedural Default

### A.     Legal Standard

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b),( c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir.1990).

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97S.Ct. 2497, 53 L.Ed.2d 594 (1977)).  A claim may become procedurally defaulted in two ways.  *Id.*  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court.  *Id.; see also Maupin v. Smith*, 785F.2d 135, 138 (6th Cir. 1986).  If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[2]  *Id.*

---

[2] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138–39; *Barkley v. Konteh*, 240 F. Supp.2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)." *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lovins*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.")  This second type of procedural default is often confused with exhaustion.  Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id*.  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id.*  Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms

31

sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138–39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.* Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Perkins v.LeCureux*, 58 F.3d 214, 219–20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman v. Thompson*, 501 U.S.722, 749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). *See also Jones v. Bradshaw*, 489 F. Supp.2d 786, 807 (N.D. Ohio 2007); *Allen v. Harry*, 2012 WL 3711552 at * 7 (6th Cir. Aug. 29, 2012).

**B. Application to Petitioner**

Here, Fenderson fairly presented his First, Second, Fourth, Fifth, and Sixth habeas grounds to the Ohio courts. Fenderson procedurally defaulted on his Third Ground for relief due to his failure to object to the victim impact letter at the trial court sentencing. The Sixth Circuit has held that failure to object contemporaneously at trial means petitioner waives "all but plain error review" under Ohio law, and Ohio's enforcement of the contemporaneous-objection rule is "'an independent and adequate state ground' of decision" sufficient to bar habeas relief. *Hand v. Houk*, 871 F.3d 390, 417 (6th Cir. 2017), citing *Wogenstahl v. Mitchell*, 668 F.3d 307, 336 (6th Cir. 2012). "The mere fact that the Ohio Supreme Court conducted 'plain error review does not constitute a waiver of the state's procedural default rules and resurrect the issue.'" *Id.,* citing *Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006). In *Hand*, the petitioner failed to object to a trial court jury instruction during trial, and even though the claim was raised on direct appeal for plain error, the claim was procedurally defaulted. (*Id.*)  The *Hand* Court found Hand was barred from raising this claim for relief in a habeas petition unless he could demonstrate cause and prejudice to excuse the default. (*Id.*)

Fenderson argues he did not procedurally default because under Ohio law, a defendant is not guaranteed the right to obtain and respond to a victim's statement. (Doc. No. 10 at 32, citing R.C. 2930.14(A) (the court "may give copies of any written statement made by the victim.")) Fenderson claims victim statements are typically a recitation of the suffering the victim endured and do not usually contain new information, and thus, Fenderson did not know he had reason to object until the court of appeals issued its opinion and provided more detail of the contents of the letter. (*Id*. at 33-34.)

Here, as in *Hand*, Fenderson did not object to the victim impact letter at the trial court level. Review of the sentencing transcript reveals Fenderson's trial counsel did object at other times during the sentencing and was generally advocating on behalf of his client. (Doc. No. 8-7 at 18-19, 56.) When the victim advocate stated the victim's mother provided a statement for the judge to read that the victim's mother did not want

33

read aloud, Fenderson's counsel failed to object, and only made a statement about allowing Fenderson's family to make a statement. (*Id*. at 65.)

Accordingly, the undersigned recommends finding Fenderson's Third Ground procedurally defaulted.

Despite this failure, Fenderson can overcome procedural default if he can show both cause and prejudice. *See Maupin*, 785 F.2d at 138–39. To show cause, an external factor must be shown to impede efforts to comply with the procedural rule. *See Franklin*, 434 F.3d at 417. Prejudice is not shown unless Fenderson demonstrates that there is a "reasonable probability" that the outcome would have been different. *See Mason,* 320 F.3d at 629. Even assuming *arguendo* that Fenderson can show cause, he cannot show prejudice. As the state appellate court explained, the victim impact letter contained no new information different from that presented by the state at sentencing and discussed the emotional impact the victim's death had on his family which the court explained was "essentially irrebuttable." *Fenderson*, 2023-Ohio-2903, ¶ 59. The outcome would not have been different had the letter been disclosed. Therefore, Fenderson cannot show prejudice.

For all of the foregoing reasons, the undersigned recommends finding Fenderson's Third Ground procedurally defaulted as well as non-cognizable.

## V.     Motion to Expand the Record

Currently pending is Petitioner's Motion to Compel Respondent to Supplement or Expand the Record (Doc. No. 11).  Respondent filed a brief in opposition to the motion. (Doc. No. 15.) For the following reasons, Petitioner's Motion to Expand the Record (Doc. No. 11) is DENIED.

In his Motion to Expand the Record, Fenderson requests the Court compel Respondent to supplement the record pursuant to Rule 5(c), or to expand the record under Rule 7 of the Rules Governing Section 2254 Cases, to include the following:

- Manually filed exhibits, "including hard drives containing video and photographic evidence . . . includ[ing] videos and still images from the victim's social media accounts in which he publicly taunted and threatened Petitioner and others while brandishing an automatic firearm, as well as other visual evidence which is relevant to sentencing and the factual basis of the habeas claims."

- A "sealed victim impact statement" the trial court relied on for sentencing purposes.

- A sealed Presentence Investigation report that trial counsel was permitted to review but not retain.

(Doc. No. 11, pp. 1-2.) Fenderson argues the evidence should be included because "[t]heir absence impairs the Court's ability to evaluate the constitutional claims." (*Id*. at 2.) Fenderson further argues the sealed victim impact statement is relevant to Ground Three, which challenges the trial court's reliance on the victim impact statement where the contents of the statement were not disclosed. (*Id*.) Finally, Fenderson argues the sealed Presentence Investigation Report should be included because it demonstrates the mother of the victim was not a witness and had no firsthand knowledge of the crime. (*Id*.) Fenderson states trial counsel was permitted to review the Presentence Investigation Report ("PSI") but could not retain a copy. (*Id*.)

Respondent argues Fenderson's motion should be denied because a "sentence within state statutory limits is not cognizable" and, in general, Fenderson's "habeas grounds are not cognizable or not reviewable for other reasons, or meritless", as detailed in Return of Writ. (Doc. No. 12, p. 1.) Regarding the PSI, Respondent claims Fenderson "had the opportunity to correct inaccuracies but refused to participate in the presentence investigation process." (*Id*. at 3.) Respondent asserts Ohio law does not require that defendants receive a copy of a PSI but instead have an opportunity to review it. (*Id*. at 4.) Regarding Ground Three, Respondent claims the trial court properly imposed the RVO sentence pursuant to Ohio law. (*Id*. at pp. 5-6.) Respondent argues the trial court was not required, under Ohio law, to provide Fenderson a copy of the victim impact statement. (*Id*. at 6.)

35

Fenderson replies that "the challenges [he] asserts in every ground are cognizable. (Doc. No. 14, p. 1.) Fenderson reiterates the PSI is relevant to determining the merits of Ground Three. (*Id*. at 2.) Fenderson argues the sealed victim impact statement contained new, prejudicial information that Fenderson did not know about until the court of appeals issued its decision, is necessary to evaluate the merits of Ground Three. (*Id*. at 3-4.) Fenderson claims the manually filed exhibits "may refute the undisclosed victim's statement" and "provide context for the other habeas grounds." (*Id.* at 4.)

Rule 5(c) of the Rules Governing Section 2254 Cases provides, in part, "[t]he respondent must attach to the answer parts of the transcript that the respondent considers relevant. The judge may order that the respondent furnish other parts of existing transcripts or that parts of untranscribed recordings be transcribed and furnished." Rules Governing § 2254 Cases, 28 U.S.C. § 2254 (2010), R.5(c). Rule 7(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that a court may direct the parties to expand the record by submitting additional materials relating to the petition. *See* Rules Governing § 2254 Cases, R. 7(a).

"[T]he Sixth Circuit has recognized that expansion of the record in habeas cases 'is not mandatory . . . and is left to the discretion of the trial judge.'" *Myers v. Haviland*, No. 3:16-CV-00659, 2017 WL 9476855, at \*17 (N.D. Ohio May 8, 2017) (quoting *Ford v. Seabold*, 841 F.2d 677, 691 (6th Cir. 1988)). However, "[a] district court's discretion to expand the record is limited by their inability to consider evidence not presented before the state courts when determining the merits of a claim that the state courts addressed on the merits." *Sands v. May,* No. 1:23-CV-02222-JJH, 2024 WL 5186763, at \*12 (N.D. Ohio Dec. 20, 2024), quoting *Newton v. Turner*, No. 1:20-cv-2799, 2024 WL 1853042, at \*2 (N.D. Ohio Apr. 29, 2024) (citing *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)).

The undersigned finds Fenderson's requests to expand the record unwarranted. As explained above, Fenderson's grounds for relief are non-cognizable and/or procedurally defaulted. Even if the Court were to

36

consider the requested additional evidence, it would not alter the fact that Fenderson's claims are non-cognizable or procedurally defaulted.  Expansion of the record is thus unnecessary and unwarranted. *See Newton*, 2024 WL 1853042 at *2 (holding that expansion of record was unwarranted where petitioner's claims were either non-cognizable or procedurally defaulted); *Hartman v. May*, No. 3:23-CV-00005, 2023 WL 11016263, at *10 (N.D. Ohio July 20, 2023) (denying in part petitioner's motion to expand record where documents were unnecessary to resolution of petition); *Brown v. Miller*, No. 5:13CV2842, 2015 WL 4879100, at *22 (N.D. Ohio Aug. 14, 2015) (denying motion to expand record where existing record was sufficient to resolve petitioner's claims).

Fenderson's Motion to Expand the Record (Doc. No. 11) is DENIED.

### VI.    Conclusion

For all the reasons set forth above, it is recommended that the Petition be DENIED. Fenderson's Motion to Expand the Record (Doc. No. 11) is DENIED.

Date: July 28, 2026                                     *s/ Jonathan Greenberg*
                                                        Jonathan D. Greenberg
                                                        United States Magistrate Judge

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**